## IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

LIBERTY MEDIA HOLDINGS, LLC )
A California Corporation )  **Case No.**
)
Plaintiff, )
)
vs. )
)
HOTFILE CORP., ANTON TITOV, LEMURIA )
COMMUNICATIONS, INC., PAYPAL, INC., )
AND JOHN DOES 1-1000 )
)
Defendants. )
)

## COMPLAINT

## INTRODUCTION AND PARTIES

1.      This is an action by Liberty Media Holdings, L.L.C. (hereinafter "Plaintiff," or

"LIBERTY"), a California limited liability company, to recover damages arising from massive

infringement of LIBERTY's copyrights in its creative works by a confederation of intellectual

property thieves consisting of Defendants Hotfile Corp., a Panamanian company (hereinafter

Defendant Hotfile.com); Anton Titov (hereinafter, "Defendant Titov"), a Russian individual who

claims to reside in Bulgaria and/or Amsterdam, but who regularly resides in and does business in

the Southern District of Florida; Lemuria Communications, Inc., a Florida corporation, and

Defendants John Does 1 through 1000, (hereinafter "Defendant John Doe 1-1000"), individuals

presently unknown to Plaintiff LIBERTY.

2.      Defendants, jointly and severally, with actual or constructive knowledge of or

with willful blindness, reproduced and distributed certain LIBERTY-owned works through

www.Hotfile.com (hereinafter "Hotfile website").   www.Hotfile.com is an Internet website

owned, operated, and controlled by Defendants Hotfile.com and Titov.   Defendant Lemuria is

web-hosting company, which was created for the purpose of providing web-hosting services to Hotfile.com.  Defendants John Doe 1-1000 are Affiliates, as later defined herein, of Defendant Hotfile.com.  They are unidentified at this time.

## JURISDICTION & VENUE

### A.　　Jurisdiction

3.　　This is a civil action for injunctive and permanent relief and damages for copyright infringement, 17 U.S.C. §§ 101 *et seq.*

4.　　This Court has subject matter jurisdiction over LIBERTY's claims for copyright infringement and related claims.

5.　　The Court has personal jurisdiction over each of the Defendants, as follows:

(1)　　Defendant Lemuria's principal place of business in the United States is within the Southern District of Florida.

(2)　　Defendant Hotfile stored, operated, or contracted to operate web-servers in Dallas, Texas and Pompano Beach, Florida.  Further, as a foreign corporation, it is subject to suit in any appropriate district in the United States;

(3)　　The Court has personal jurisdiction over Defendant Titov.  A Federal Court that has jurisdiction over a corporation also has jurisdiction over its alter egos.  Defendant Titov directed or caused to be directed Defendant Hotfile's actions in a manner consistent with the elements of alter ego, *infra*.  Furthermore, Titov regularly conducts business in this judicial district and resides at 101 20th Street in Miami Beach (apartment number redacted).

B.    **Venue**

6.    Venue is proper in this Court pursuant to 28 U.S.C. §§ 1391(b), (c) and (d).

7.    Venue is also appropriate before this Court under 28 U.S.C. §1400(a).

## THE PARTIES

A.    **Plaintiff Liberty Media Holdings, L.L.C.**

8.    LIBERTY is a California limited liability corporation doing business as CORBIN FISHER®, with a mailing address of 302 Washington Street, Suite Number 321, San Diego, California, 92103.  LIBERTY produces, markets, and distributes adult entertainment products, including, *inter alia*, Internet website content, videos, DVDs, and photographs.

9.    Plaintiff discovered more than 2400 links to its original titles illegally or improperly stolen, and illegally distributed on Hotfile.com.  Defendant Hotfile.com used Defendant Lemuria Communications' services to achieve its unlawful goals.  An accurate number of the copyrighted works infringed, stolen, or improperly obtained is unavailable until LIBERTY conducts discovery.

B.    **Defendant Hotfile Corp.**

10.    Defendant Hotfile.com is a Panamanian corporation with no actual business office in Panama.  Additionally, Defendant Hotfile.com failed to list its registered agent for service on its corporate documents.    Upon information and belief, Plaintiff avers that Defendant Hotfile.com's registered agent is in jail or in hiding.  Defendant Hotfile.com conceals, disguises, and obfuscates the facts of its location, address, and principals.  This behavior suggests that Defendant Hotfile engages in illegal conduct and reveals Defendant's unlawful intent.

11.     Defendant Hotfile.com does business as, and operates the Hotfile.com website at, www.Hotfile.com.  Defendant Hotfile.com competes with LIBERTY in the distribution and sale of adult-oriented, audiovisual works through Internet distribution.

**C.     Defendant Anton Titov**

12.     Defendant Anton Titov is believed to be a Russian citizen who has claimed to be residing in Bulgaria and/or Amsterdam and is an alter ego of Defendant Hotfile, or, as a director thereof, possesses sufficient authority in the company that he should be held liable for its actions. Titov has a regular place of residence in Miami Beach, Florida, or elsewhere within this district.

**D.     Lemuria Communications, Inc.**

13.     Defendant Lemuria is a Florida corporation that provides hosting services to Defendant Hotfile.com and acts in concert with Defendant Hotfile.com to facilitate mass copyright infringement.  Defendant Lemuria is the alter ego of Defendant Titov.

**E.     Defendant PayPal, Inc.**

14.     Defendant PayPal, Inc., is a California corporation that provides payment and financial services to Defendant Hotfile.com, Defendant Titov and, on information and belief, Defendant Lemuria.  The Defendants named in this Complaint receive and keep their financial assets in Defendant PayPal, Inc.'s care.

**F.     Defendants John Does 1-1000**

15.     The true names and capacities, whether individual, corporate, affiliate, or otherwise, of Defendant John Does 1-1000, inclusive, are presently unknown to Plaintiff Liberty. It is for that reason Plaintiff Liberty sues these Defendants by fictitious names.  Plaintiff Liberty avers that each of the John Doe defendants, along with the named defendants, jointly or severally, is responsible for the damages alleged herein.

16.     John Does 1-1000 posted Plaintiff LIBERTY's copyrighted works on Defendant Hotfile.com's website and/or on Defendant Lemuria's servers.  Plaintiff intends to amend this Complaint when the true name of any John Doe defendant becomes known.

17.     LIBERTY avers that each Defendant, individually, corporately, jointly and/or severally, acted intentionally, knowingly, negligently or through willful blindness, as an agent or representative of each and every, all and singular, the other Defendants, and acted to further the ends of the illegal and improper purposes alleged herein in a common course or scheme to infringe on the Plaintiff's copyrighted intellectual property for profit and monetary gain.

## STATEMENT OF FACTS

18.     Beginning in the 1990s, the Internet became a flea-market of copyrighted intellectual property, pirated from the property's producers and legitimate owners.  Initially, this was the realm primarily of individuals pirating music files on centralized servers such as Napster.  *See e.g., A&M Records, Inc., et al. v. Napster, Inc., et al*., 284 F.3d 1091 (9th Cir. 2002); *see also, A&M Records, Inc., et al.  v. Napster, Inc., et al.*, 239 F.3d 1004 (9th Cir. 2001). The Ninth Circuit held Napster responsible for being a clearinghouse for pirated music.  Post-*Napster*, intellectual property thieves adapted a decentralized model where none of the stolen files resided on a central computer.  The pirated files resided on the individual end-user's computer instead.  This decentralized model helped those interested in pirating copyrighted works by using computers communicating with one another directly, rather than to a common, centralized server.  Owners of various piracy systems claimed that they were merely "facilitating communication" between the parties.

19.     The Supreme Court ruled this business model illegal in *Metro-Goldwyn-Mayer Studios, Incorporated v. Grokster, Limited*, 545 U.S. 913, 125 S.Ct. 2764, 162 L.Ed.2d 781

(2005). In *Grokster,* the Supreme Court held that users could sue the defendant, a peer-to-peer network operator, for inducing copyright infringement.

20. The present conspiracy, fostered by the Defendants and other unknown individuals, represents an emerging model for stealing – and profiting from – others' intellectual property. This latest adaptation is a reaction to both the legal regime after *Grokster* and the technological reality that permits wholesale theft and online distribution of entire motion picture films. The Defendants' model requires enormous amounts of bandwidth and data/electronic storage capacity. Defendant Hotfile.com, a self-described "one-click hosting" site, has the technological capacity to implement this new strategy. In conjunction with the other named Defendants, Defendant Hotfile.com presently is active in the theft and distribution of copyrighted intellectual property, including, but not limited to, motion pictures.

21. Under the "one-click" hosting business model, a company provides access to massive amounts of data storage. The primary purpose of this storage capacity and allowing rapid public access to it is the unauthorized use and exchange of copyrighted works. Much like Napster, the offending company stores the stolen works on its computers and servers. Unlike Napster, though, one-click hosting services are careful not to index the files, or acknowledge the almost uniformly illegal use of its system.

22. Defendant Hotfile.com's own website stated:

> HOTFILE.COM – Free one-click hosting!
> With us you can **share big files** easily and securely:
> Just choose a file, click the "Upload" button and send the download link to your friends
> and anyone you know.

23. Defendant Hotfile.com, like Grokster before it, has a *theoretical* legitimate use. Certainly, there are large files that individuals might want to share with other users with no illegal intent. Defendant Hotfile.com's practical and overwhelmingly popular application,

however, is singular and transparent: To profit from the illegal sharing of copyrighted materials, many of which are the intellectual property of LIBERTY.

24.     Defendant Hotfile.com provides its users with the ability to upload and download materials anonymously.  Hotfile.com cleverly avoids cataloging or indexing the files in order to be willfully blind to their users' uploads and downloads, while profiting from the site's web traffic.  Demonstrating that Defendant Hotfile.com is aware of the illegality of its conduct, it offers two methods for download services.  For its first option, Defendant Hotfile.com permits its partners to download a stolen movie at a very slow transfer speed for no charge.  The other option allows users to pay a premium to download the movie ten times faster.  Defendant Hotfile.com uses an example of content available for download on its site on its "File Checker Pages."  *See* http://hotfile.com/checkfiles.html.  The example given is, in fact, the entire copyrighted Pussycat Dolls album, *"Doll Domination 2.0."*

25.     If an individual shared one or two legitimate files, the delay caused by using the "free" download service would not justify the time necessary to enter a credit card number to receive the "paid" download service.  However, if an individual depends on Defendant Hotfile.com as a source of stolen intellectual property, including movies and music, the membership fee is a bargain.  For $3.00 per day or $55.00 per year, a user can download an unlimited amount of movies and music.  Neither Defendant Hotfile.com nor the individual downloading the pirated material pays anything to the actual copyright owner.

26.     Defendant Hotfile.com's library of illicitly obtained materials does not appear magically or accidentally.  Defendant Hotfile.com depends on an army of assistants to upload the content.  The newest and most sought-after content attracts new users.  A percentage of users,

both old and new, sign up for the premium "paid" download service to obtain priority access to the most recently pirated content, making Defendant Hotfile.com a hugely profitable enterprise.

27.    Defendant Hotfile.com calls its assistants "Affiliates."   The basis of each Affiliate's compensation is three-fold: (1) the amount of content he or she uploads; (2) how often users download that content; and, (3) the number of new Affiliates he or she brings to Defendant Hotfile.com.   Defendant Hotfile.com's business model resembles a massive pyramid; veteran copyright infringers recruit new copyright infringers, while all infringers attract recruits to download the pirated intellectual property from which they receive a payment.   Defendant Hotfile.com shares a small portion of its ill-gotten gains with its Affiliates, but, unquestionably, receives significant profits through the massive theft on which its business model relies.

28.    Defendant Hotfile.com's financial model works in this manner: a user uploading a file to Defendant Hotfile.com receives a "referral fee" if another, separate user signs up for Defendant Hotfile.com's premium download service as a result of seeing the newly-uploaded file.   Defendant Hotfile.com receives revenue from members paying for the "premium membership package."

29.    Newly uploaded content, virtually all of which is illegally and improperly obtained, can be found on Defendant Hotfile.com's servers by web search engines, such as Google, and acts as an advertisement and inducement for visitors to sign up for the premium download service.   Defendants additionally earn revenue by selling memberships to view the illegally obtained video files.   Thus, stolen copyrighted material is the source of Defendant Hotfile.com's revenue.

30.     Plaintiff LIBERTY discovered more than 800 copies of its copyrighted material illegally shared on Defendant Hotfile.com's website.   Plaintiff LIBERTY conducted an investigation.  The investigation revealed:

    a.  Defendant Lemuria is the web host for Defendant Hotfile.com.

    b.  Defendant Hotfile.com did not have a registered Agent under the Digital Millennium Copyright Act (DMCA), required by 17 U.S.C. §512(c)(2) to qualify for the law's "safe harbor" provisions.   *See* http://www.copyright.gov/onlinesp/list/h_agents.html.   Defendant Hotfile.com has since filed the appropriate registration documents, but this registration would only provide shelter for works infringed upon after the date of registration.

    c.  Defendant Lemuria did have a registered DMCA Agent, required by 17 U.S.C. §512(c)(2), to qualify for the DMCA safe harbor provisions.  *See* http://www.copyright.gov/onlinesp/list/w_agents.html.

31.     Defendant Hotfile.com's website brazenly provides the blueprint for its massive copyright infringement conspiracy.   Hotfile.com's Affiliate Program solicits, employs, encourages, and pays others to engage in repeated copyright infringement.   Defendant Hotfile.com's website explains the Affiliate Program is not a mere remote hard drive service for personal files.  Defendant Hotfile.com expects its Affiliates to: (1) recruit users to download infringed materials; and, (2) continue to upload a steady stream newly infringed content. Defendant Hotfile.com's website bolsters the nature of the illicit enterprise: "*We are trying to encourage the good promoters by increasing their earnings and to reduce the earnings for*

uploaders [sic] *that mainly use the free hotfile* [sic] *resources for storage.*"   *See* www.Hotfile.com (emphasis added).

32.    Defendant Hotfile.com's Affiliates receive compensation depending on their profit production.  Platinum Members earn the highest compensation and status level.  Defendant Hotfile.com explains the method by which an Affiliate becomes a Platinum Member:

**Affiliates: How do I become platinum member / raise my rank?**
> Essentially to reach a higher status your links should sell more premium accounts. Here are few tips that may help you to obtain a higher rank and eventually reach platinum status:
> •      Try to post files from hotfile.com only.  Using another file hosting service for the same files allows users to simultaneously download from different sites and they have less incentive to buy premium.
> •      Switching to different file hosting services every other day hurts your rank - that way people are less willing to buy a premium account, as they will need multiple premium accounts from different services to get all the content and that is more expensive.
> •      Upload files only if you intent *[sic]* to promote them.  Used server space is also accounted *[sic]* when your rank is considered.
> •      Put more effort into bringing more visitors to download your files, rather than to upload more files.  If you upload 10Gb of files everyday just to have every file downloaded just few times you are going to be stuck with Copper.
> •      Post only on reliable resources.  Posting on sites that have popups, *[sic]* try to install troyans *[sic]* or similar stuff hurts your performance and you lose rank.


33.    Defendant Hotfile.com is not a mere "service provider."  It is a massive copyright infringer.  It engages "Affiliates" who steal copyrighted content and provide this content to Defendant Hotfile.com.  Defendant Hotfile.com publishes illicitly obtained copyrighted materials to lure potential members to its website.  Defendant Hotfile.com engages in this illicit activity for profit.  The Affiliates uploading the illicitly obtained material also profit; Defendant Hotfile.com compensates Affiliates for their nefarious activity.

34.    Defendant Lemuria either directly or indirectly, with either actual or constructive knowledge, or through willful blindness, engaged in the illicit enterprise.  It provided hosting

services to Defendant Hotfile.com.  The very nature of Defendant Hotfile.com's business, in addition to the site's content encouraging copyright infringement, directly or indirectly provided Defendant Lemuria with actual or constructive knowledge of Defendant Hotfile.com's illegal activity.[1]  Defendant Lemuria's lack of knowledge, if any, is a consequence of willful blindness. Indeed, each and every act of infringement committed on www.Hotfile.com occurred through servers owned and operated by Defendant Lemuria.

35.     The principals, both known and unknown, of all Defendants are equally liable for the legal wrongs LIBERTY alleges.  Intellectual property claims include both the corporate entity and the principals who contributed to the infringement.  *See, e.g., Chanel, Inc. v. Italian Activewear of Florida, Inc.*, 931 F.2d 1472 (11th Cir. 1991); *see also, Mead Johnson & Co. v. Baby's Formula Serv., Inc.*, 402 F.2d 19, 22 (5th Cir. 1968); *see also, Wilden Pump & Engineering Co. v. Pressed & Welded Products Co.*, 655 F.2d 984 (9th Cir. 1981).

36.     Normally, a web hosting company takes advantage of the "safe harbor" provisions of the DMCA, 17 U.S.C. §512, and would not become a defendant in this cause of action. During the times relevant to this Complaint, Defendant Hotfile.com failed and refused to register a DMCA agent in the United States Copyright Office.  It is not entitled to the DMCA's safe harbor provisions for the complained of infringements.

37.     Each and every one of the Defendants used the above-described technology to engage in massive infringement of LIBERTY's copyrights.  All Defendants, either jointly, severally, actually, constructively, and with or without direct concert with one another, deprived LIBERTY of the lawful monetary rewards that accompany its rights in the copyrighted works. Defendants' disregard for copyright laws threatens LIBERTY's business.

---

[1] Plaintiff intends to seek DMCA notices transmitted to Lemuria and other correspondence showing its actual knowledge of copyright infringement committed on its servers by Defendant Hotfile.com during discovery.

38.     The audiovisual works at issue are valuable and easily discernable as professionally produced works.  LIBERTY created the works using highly talented performers, directors, cinematographers, lighting technicians, set designers, and editors.   LIBERTY furthermore created the works using the highest quality cameras, lighting, and editing equipment. Plaintiff's capital investment in its productions exceeds hundreds of thousands of dollars annually.  These capital investments represent sunk costs that Defendants do not incur.  Rather, Defendants avoid virtually any capital investments and rely on LIBERTY's efforts to achieve their profits.

39.     All of the Defendants solicit individuals to supply copyrighted works belonging to others for reproduction, distribution, public display, and sale through Defendant Hotfile.com's website.   Individuals supply thousands of videos, many of which belong to LIBERTY. Individuals and the Defendants transfer this intellectual property and exploit its commercial value without authorization.

40.     Neither the individuals supplying copyrighted works to Defendants, nor the Defendants themselves, determine the true and correct owners of the copyrighted works.  This is true although both the persons or entities uploading the pirated content and the Defendants receiving and distributing these works are actually or constructively aware, should be aware, or are willfully blind that the copyrights belong to entities other than the individuals or Defendants. Both the individuals supplying the works and the Defendants distributing the intellectual property fail and refuse to apply for proper licensing and further fail to determine the identity and age of the actors appearing in the works as required by Federal law.

41.     Defendants reproduce and distribute Plaintiff LIBERTY's works on Defendant Hotfile.com's website.

42.     Defendants actively engage in, promote, and induce copyright infringement.

43.     Defendants' unauthorized reproduction, public display, and distribution of LIBERTY's works serve as an inducement, attracting many individuals to purchase memberships to access the Defendant Hotfile.com website, including residents of Florida.

44.     Plaintiff's employees discovered and documented that Defendants reproduced, publicly displayed, and distributed, through the Defendant Hotfile.com website, more than 800 unauthorized video files copyrighted by and belonging to LIBERTY.  Defendants' customers viewed the illegally and improperly obtained intellectual property files thousands of times.

45.     Defendants' business model depends on the illegal uploading, posting, displaying and performance of copyrighted audiovisual works belonging to Plaintiff LIBERTY.  Defendants intentionally, knowingly, negligently, or by willful blindness built a library of works that infringed on copyrighted material designed to draw Internet traffic to sell memberships to view the works, creating substantial revenues thereby.

46.     Defendants intentionally, knowingly, negligently, or through willful blindness avoided reasonable precautions to deter rampant copyright infringement on Defendant Hotfile.com's website.

47.     Defendants make no attempt to indentify the individuals providing the works, where the individuals obtained the works, or whether the individuals had authority to further reproduce and distribute the works.

48.     Defendants shift the burden to copyright owners to monitor Defendants' website(s) on a continual basis to detect infringing files and to send notices demanding that Defendants take down the infringing files.

49.     In an electronic version of "whack-a-mole," Defendants force legitimate copyright owners to patrol Defendant Hotfile.com's website.  The website has no directory, making it difficult, if not impossible, for a copyright holder to determine the location of its works and send a takedown demand.  During the delay between issuing a takedown demand and the Defendants' compliance, many people continue to download the stolen materials.  However, Defendants continue to upload works pirated from LIBERTY.

50.     Defendants' acts and omissions allow them to profit from their infringement while imposing the burden of monitoring Defendant's website onto copyright holders, without sufficient means to prevent continued and unabated infringement.

51.     Prior to releasing its works into the Internet market or retail market in DVD format, LIBERTY marks each work with a copyright notice.  LIBERTY's labels reflect its true business address and a statement that it maintains age authentication records at that address, as required by 18 U.S.C. §2257.

52.     Plaintiff prominently displays its copyright mark and trademark on its website and films.

53.     Defendants' infringements harmed and continue to harm LIBERTY and others by illegally deriving economic benefit from LIBERTY's creative works.  Defendants' continued infringements undermine Plaintiff LIBERTY and other creative enterprises that produce audiovisual works.

54.  This causes a great diminution in Plaintiff LIBERTY's profits.

55.  Plaintiff LIBERTY seeks immediate redress, as follows:

    a.  A declaration that Defendants' conduct in reproducing and distributing Plaintiff's copyrighted works without authorization willfully infringes Plaintiff LIBERTY's copyrights;

    b.  A permanent injunction requiring Defendants employ reasonable methods and/or technologies preventing or limiting infringement of Plaintiff LIBERTY's copyrights;

    c.  Statutory damages for Defendants' past and present willful infringement, or actual damages plus profits.

## FIRST CAUSE OF ACTION

**Alter Ego as to Defendant Hotfile.com, Defendant Titov, and Defendant Lemuria**

56.  Plaintiff realleges and incorporates by reference paragraphs 1-56, as if set forth herein.

57.  Defendant Titov is, and at all pertinent times was, the sole owner of the stock of Defendants Hotfile.com and Lemuria.

58.  On information and belief, Defendant Titov is, and at all pertinent times was, the only owner of Defendants Hotfile.com and Lemuria, and that Defendants Hotfile.com, Titov, and Lemuria are alter egos of each other.

59.     There exists, and at all pertinent times existed, a unity of interest in ownership between Defendant Titov, Defendant Hotfile.com, and Defendant Lemuria.  Any individuality and separateness between Defendants ceased and Defendant Titov is the alter ego of Defendants Hotfile and Lemuria as follows:

       a.  Defendants Titov, Hotfile, and Lemuria commingled funds and other assets for their own convenience and to assist in evading payment of obligations;

       b.  Defendant Titov diverted funds and other assets of Defendants Hotfile.com and Lemuria for uses other than legitimate corporate concerns;

       c.  Defendant Titov treated assets of Defendants Hotfile.com and Lemuria as his own;

       d.  Defendant Titov controlled, dominated and operated Defendants Hotfile.com and Lemuira as his individual business and alter ego, carried out the activities and business of Defendants Hotfile.com and Lemuria without holding directors' and shareholders' meetings, and without maintaining adequate records or minutes of corporate proceedings;

       e.  Defendant Titov failed to capitalize adequately Defendants Hotfile.com and Lemuria;

       f.  Defendant Hotfile.com is, and at all pertinent times was, a mere shell, instrumentality, and conduit through which Defendant Titov carried on personal business in a corporate name exactly as if the corporation were unincorporated;

g.  Defendant Titov exercised complete control and dominance to an extent that any individuality or separateness of Defendants Hotfile.com, Lemuria, and Titov does not presently exist and did not exist in the past; and,

h.  Defendant Titov diverted assets from Defendant Hotfile.com and Defendant Lemuira to himself to the detriment of creditors, including LIBERTY.

60.    The separate existence of Defendant Hotfile.com and Defendant Lemuria as entities distinct from Defendant Titov is a fiction.  Recognition of this fiction permits the court find an abuse of the corporate privilege.

## SECOND CAUSE OF ACTION

### Copyright Infringement – 17 U.S.C. §501 as to all Defendants

61.    Plaintiff realleges and incorporates by reference paragraphs 1-61, as if set forth herein.

62.    LIBERTY holds the copyright on each of the infringed works alleged in this action.  Plaintiff has registered each copyright with the United States Patent and Copyright Office.

63.    The number of infringed copyrights grows daily.  Plaintiff LIBERTY reserves the right to file supplemental updates to this Complaint in order to list all past and current infringements.

64.    At all pertinent times, LIBERTY was the producer and registered owner of the audiovisual works illegally and improperly reproduced and distributed by Defendants through Defendant Hotfile.com's website and Defendant Lemuria's servers.

65.     Defendants John Doe 1-1000 reproduced, reformatted, and distributed Plaintiff LIBERTY's copyrighted works by and through servers and/or other hardware owned, operated, and/or controlled by Defendant Hotfile.com and/or Defendant Lemuria.

66.     Defendants infringed Plaintiff's copyrights by reproducing and distributing the works through Defendant Hotfile.com's website and Defendant Lemuria's servers without proper approval or authorization of LIBERTY.

67.     Defendants knew, or should have reasonably known, they did not have permission to exploit LIBERTY's works on Defendant Hotfile.com's website or through Defendant Lemuria's servers.  Additionally, Defendants Hotfile.com and Lemuria further knew or should have known that their acts constituted copyright infringement.

68.     All Defendants made no attempt to discover the copyright owners of the pirated works before exploiting them.  Defendants failed and refused to take any reasonable measures to determine whether the owner or license holder of copyrighted works.

69.     Defendants John Doe 1-1000, Defendant Hotfile.com, Defendant Lemuria, and Defendant Titov engaged in intentional, knowing, negligent, or willfully blind conduct sufficient to demonstrate they engaged actively in the improper collection and distribution of LIBERTY's copyrighted works.

70.     The quantity of copyrighted files available to Internet users increased the attractiveness of Defendant Hotfile.com's services to its customers.

71.     Defendant Hotfile.com and Defendant Titov actively encouraged users to upload pirated copyrighted files.

72.     Defendant Hotfile.com and Defendant Titov controlled the files removed from Defendant Hotfile.com's website and determined which files remained.

73.     Defendant Lemuria was aware, should have been aware, or was willfully blind to Defendant Hotfile.com's illegal activity and the illegal activities of Defendant John Doe 1-500.

74.     Defendant Lemuria generated ever-increasing revenue from Defendant Hotfile.com as web-traffic to Defendant Hotfile.com increased.  This relationship was more than Defendant Lemuria merely receiving revenue for providing hosting to Defendant Hotfile.com. Defendant Lemuria and Defendant Hotfile.com enjoyed a symbiotic relationship requiring interrelated dependence on extensive digital storage facilities.  Defendant Hotfile.com drove the demand for increased digital storage capacity by promoting improperly and illegally obtained works stored on servers owned by Defendant Lemuria and leased by Defendant Hotfile.com.

75.     None of the Defendants adopted procedures to ensure that distribution of LIBERTY's copyrighted materials would not occur.  Further, neither Defendant Hotfile.com nor Defendant Lemuria established, implemented, or enforced a "repeat infringer" policy required by the DMCA.

76.     Defendant Hotfile and Defendant Lemuria were actually or constructively aware, should have been aware, or were willfully blind that pirated copyrighted materials comprised the most popular downloads on the Defendant Hotfile.com system.  Defendant Hotfile.com and Defendant Lemuria.com affirmatively and willfully accommodated Internet traffic generated by illegal acts.

77.     Defendants' conduct was willful within the meaning of 17 U.S.C. §101, *et seq*. At a minimum, Defendants acted with willful blindness and reckless disregard of LIBERTY's registered copyrights.

78.   Because of their wrongful conduct, Defendants remain liable to LIBERTY for copyright infringement under 17 U.S.C. § 501.  LIBERTY suffers and will continue to suffer substantial losses, including, but not limited to, damage to its business reputation and goodwill.

79.   The law permits LIBERTY to recover damages, including readily ascertainable direct losses and all profits Defendants made by their wrongful conduct, under 17 U.S.C. § 504.  Alternatively, 17 U.S.C. § 504(c) permits Plaintiff LIBERTY to recover statutory damages.

80.   Because of Defendants' willful infringement, the law permits enhancement of the allowable statutory damages under 17 U.S.C. § 504(c)(2).

81.   The law permits Plaintiff LIBERTY injunctive relief under 17 U.S.C. § 502.  This Court also has the authority to issue an Order impounding any and all infringing materials by 17 U.S.C. § 503.

82.   Plaintiff has no adequate remedy at law for Defendants' wrongful conduct, as follows:

    a.   LIBERTY's copyrights are unique and valuable property having no readily determinable market value;

    b.   Defendants' infringement harms LIBERTY's business reputation and goodwill such that Plaintiff could not be made whole by any monetary award; and,

    c.   Defendants' wrongful conduct and damages to LIBERTY are continuing and unremitting.

83.   Plaintiff LIBERTY is entitled to preliminary and permanent injunctive relief prohibiting further infringement of its copyrights under 17 U.S.C. § 502.

84.     Additionally, Plaintiff is entitled to recover its attorneys' fees and costs of suit under 17 U.S.C. §505.

## THIRD CAUSE OF ACTION

**Contributory Copyright Infringement as to Defendant Lemuria and Defendant Hotfile.com**

85.     Plaintiff realleges and incorporates by reference paragraphs 1-86, as if set forth herein.

86.     Unknown individuals, without authorization, reproduced and distributed LIBERTY's works through Defendant Hotfile.com's website, directly infringing LIBERTY's copyrighted works and stored on Defendant Lemuria's servers.

87.     Defendant Lemuria and Defendant Hotfile.com contributed to these unknown individuals' infringing acts.

88.     Defendant Lemuria and Defendant Hotfile.com were aware of, should have been aware of, or were willfully blind to this infringing activity, either independently or as one and the same entity.

89.     Defendant Hotfile.com aided, abetted, allowed, and encouraged those individuals to reproduce and distribute LIBERTY's copyrighted works through its website without regard to copyright ownership.

90.     Defendant Lemuria was actually or constructively aware of Defendant Hotfile's aiding and abetting of copyright infringement through its servers, or should have been aware of this conduct based on the nature, use and content of www.Hotfile.com.

91.     Defendant Lemuria and Defendant Hotfile.com had the obligation and ability to control and stop the infringements.  However, Defendant Lemuria and Defendant Hotfile.com failed to do so.

92.     Defendant Lemuria and Defendant Hotfile.com materially contributed to the infringement; but for their conduct, this infringement would not have occurred.

93.     Defendant Lemuria and Defendant Hotfile.com received direct financial benefits from the infringements.

94.     Defendants Lemuria and Hotfile.com had a vertical symbiotic relationship in which Defendant Lemuria's hosting fees increased with the expansion of Defendant Hotfile.com's infringement operation.  This led Defendant Lemuria to permit and encourage Defendant Hotfile.com's piracy.

95.     All Defendants had actual or constructive knowledge, or should have had actual or constructive knowledge, of the infringing acts.

96.     The conduct, acts, and omission of all Defendants demonstrate contributory copyright infringement.

**FOURTH CAUSE OF ACTION**

**Vicarious Copyright Infringement as to Defendants Hotfile.com and Lemuria**

97.     Plaintiff realleges and incorporates by reference paragraphs 1-96, as if set forth herein.

98.     Without authorization, individuals reproduced, distributed, and publicly displayed LIBERTY's works through Defendant Hotfile.com's website, directly infringing LIBERTY's copyrighted works.

99.     Defendant Lemuria and Defendant Hotfile.com were actually or constructively aware or should have been aware or were willfully blind to the infringing activity.

100.    Defendant Lemuria and Defendant Hotfile.com, acting independently or as one and the same entity, were able to control or completely end the illegal and improper infringement, but failed and refused to do so.

101.    Defendant Lemuria and Defendant Hotfile.com contributed materially to the infringement.

102.    Defendant Lemuria and Defendant Hotfile.com received direct financial gain and profit from those infringing activities, as set forth *supra*.

103.    The acts, omissions, and conduct of all Defendants constitute vicarious copyright infringement.

## FIFTH CAUSE OF ACTION

**Inducement of Copyright Infringement as to Defendant Hotfile.com and Defendant Titov**

104.    Plaintiff re-alleges and incorporates by reference paragraphs 1-103 as if set forth herein.

105.    Defendants designed and distributed technology and devices and induced individuals to use this technology to promote the use of infringed and copyrighted material.  As a direct and proximate result of Defendants' inducement, individuals infringed Plaintiff LIBERTY's copyrighted works.  These individuals reproduced, distributed and publicly disseminated Plaintiff's copyrighted works through Defendant Hotfile.com's website.

106.    Defendants' inducements were willful, knowing, or negligent and, at all pertinent times, Defendants acted in disregard of and with indifference to Plaintiff LIBERTY's copyrights.

## SIXTH CAUSE OF ACTION

### Civil Conspiracy as to all Defendants

107.    Plaintiff re-alleges and incorporates by reference paragraphs 1-106, as if set forth herein.

108.    The Defendants conspired, confederated, and colluded to infringe on the Plaintiff LIBERTY's copyrights to Defendant's economic benefit and Plaintiff LIBERTY's economic and copyright detriment.

109.    Accordingly, all Defendants are jointly and severally liable for the actions of their co-conspirators.

## INJUNCTIVE RELIEF

110.    Plaintiff realleges and incorporates by reference paragraphs 1-109, as if set forth herein.

111.    Each Defendant has under its possession or control instrumentalities, evidence and proceeds from its and/or other Defendants' crimes.

112.    Specifically, Defendant PayPal, Inc., has care, custody, and control of multiple bank accounts owned by various Defendants.  The funds in these bank accounts represent the Defendants' ill-gotten gains, earned from their illegal copyright infringement.

113.    Accordingly, Plaintiff requests the Court issue orders freezing any and all assets and domain names of any and all Defendants, and issue further orders freezing the transfer of any data, assets, and/or domain names under its control pending the outcome of this case.

## JURY DEMAND

114.    Plaintiff hereby demands a jury trial.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff LIBERTY respectfully requests the Court hereby:

(1)    Enter judgment declaring that Defendant Hotfile.com and Defendant Lemuria are the alter egos of Defendant Titov;

(2)    Enter judgment declaring that Defendants, jointly and severally, with a common plan, purpose or scheme, willfully infringed Plaintiff's rights in federally registered copyrights pursuant to 17 U.S.C. §501 through direct, contributory, vicarious, and inducing acts;

(3)    Enter judgment declaring that Defendants John Doe 1-1000, Defendant Hotfile.com, and Defendant Titov, and Defendant Lemuria engaged in unfair competition by distributing Plaintiff's works without complying with 18 U.S.C. § 2257;

(4)    Issue declaratory and injunctive relief against all Defendants, their agents, representatives, servants, employees, attorneys, successors and assigns, and all others in acting in concert or participation with them, and further to enjoin and restrain all Defendants and others from copying, posting or making any other infringing use or infringing distribution of Plaintiff's audiovisual works, photographs or other materials;

(5)    Issue injunctive and declaratory relief enjoining and restraining Defendant Hotfile.com, Defendant Titov, Defendant Lemuria, and Defendants John Doe 1-1000 and their agents, representatives, servants, employees, attorneys, successors and assigns, and all others in active concert or participation with them, from engaging in further acts of unfair competition and copyright infringement;

(6)     Enter an order of impoundment pursuant to 17 U.S.C. §§503 and 509(a), impounding all infringing copies of Plaintiff's audiovisual works, photographs or other materials that are in Defendants' possession or under their control;

(7)     Enter an order enjoining Defendant Hotfile.com, Defendant Titov, Defendant and Defendant Lemuria from disposition of the any domain names registered to them and any funds in their accounts until full and final settlement of any and all money damage judgments;

(8)     Enter an order directing, *instanter*, PayPal, Inc. to freeze all assets and funds held by PayPal in any account of any Defendant named herein, pending the outcome of this case;

(9)     Enter an order requiring a full and complete accounting of all amounts all Defendants owe to LIBERTY as a result of their illegal or improper activity.

(10)    Enter an order directing the Defendants pay Plaintiff's damages and Defendants' profits pursuant to 17 U.S.C. §504(b), or in the alternative, maximum enhanced statutory damages of $150,000.00 per infringed work pursuant to 17 U.S.C. §504(c)(2), for Defendants' willful infringement of LIBERTY's copyrights;

(11)    Enter an order directing the Defendants, jointly and severally, pay LIBERTY both the costs of action and the reasonable attorney's fees incurred by it in prosecuting this action pursuant to 17 U.S.C. §504;

(12)    Enter an order directing the Defendants, jointly and severally, pay pre- and post-judgment interest at the highest legal rate;

(13)    Enter an order finding the Defendants were involved in a civil conspiracy to commit the aforementioned wrongful acts and are therefore all jointly and severally liable for all of the co-conspirators' acts; and,

(14)    Grant LIBERTY any further relief that this Court deems appropriate.

Dated: January 6, 2011                           Respectfully submitted,

                                                  s/Marc J. Randazza
                                                 Marc J. Randazza, FL Bar No.: 625566
                                                 Jason Fischer, FL Bar No.: 68762
                                                 Randazza Legal Group
                                                 2 S. Biscayne Blvd, Ste. 2600
                                                 Miami, FL 33131
                                                 Telephone: 888-667-1113
                                                 Facsimile: 305-437-7662
                                                 Electronic Mail: info@randazza.com